SAMUEL FINK and Another v. UNITED AMERICAN FIRE INSURANCE COMPANY and Another.[1]

January 7, 1910.

Nos. 16,435—(177).

**New Trial — Error to Deny It as to Certain Issues.**
 The matter in controversy being whether the lessees of a building were the owners of certain personal property described in the lease, and the court

[1]Reported in 124 N. W. 7.

having submitted to the jury the special question whether the lessees had purchased the property from the lessors on the day before the lease was executed, and having reserved all other issues of fact for the court to decide, *held*, it was error to refuse a new trial as to the issues submitted to the jury, while granting a new trial as to the issues reserved for the court.

Action against three fire insurance companies upon their policies of insurance on certain personal property. The United American Fire Insurance Company and the Michigan Commercial Insurance Company answered separately and alleged that, after the issue of the policies, there had been an increase of risk with the consent of plaintiffs; that plaintiffs were not the sole owners of the property insured, as they represented, and had no insurable interest in the same, but that plaintiffs had only a leasehold interest of no value. Anton Weinholzer and Ella Weinholzer filed complaints in intervention and alleged they were the owners of the property insured; that they had executed a lease thereof to plaintiffs, as stated in the first paragraph of the opinion, and prayed for judgment against plaintiffs and defendants for the amount of the loss, not exceeding $4,000. The case was tried before Hallam, J., who submitted to the jury four questions, viz:

1. Was there a sale by Anton Weinholzer to the plaintiffs, Samuel and Benjamin Fink, in June, 1906, of the stock and furniture and fixtures then upon the premises?

2. Was there an increase of risk with the knowledge or consent of plaintiffs after the policy was issued and before the fire?

3. What was the loss or damage to the furniture and fixtures in the premises in question at the time of the fire?

4. What was the loss or damage to the stock of liquors and cigars in the premises in question at the time of the fire?

To the first question the jury answered, "Yes"; to the second, "No,"; to the third, "$4,000;" to the fourth "$850."

The judge then made findings that plaintiffs were the unconditional owners of all the personal property, subject only to the terms of the lease; that plaintiffs did not commit any acts prohibited by the terms of the policies, and as conclusions of law found that interveners were not entitled to relief and ordered judgment against the German Fire

Insurance Company for $850 and against each of the other defendants for $2,000. Interveners appealed from an order denying their motion for a new trial as to all the issues submitted to the jury, and from the part of the order separating the issues and refusing to grant them a new trial on all the issues of the case. Defendants United American Fire Insurance Company and Michigan Commercial Insurance Company appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Thos. J. McDermott* and *William Furst,* for defendants.

*Gideon S. Ives,* for interveners.

*Oscar F. Christensen, C. D. & R. D. O'Brien,* and *Burt M. King,* for plaintiffs.

LEWIS, J.

Respondents commenced this action to recover $2,000 against each of appellant companies for the amount of insurance upon certain stock and fixtures located in a building known as the Empire Theater, in the city of St. Paul, which was destroyed by fire December 4, 1907. Respondents claim ownership by purchase from the interveners. Appellants interposed the defense that respondents were not the owners of the property, and had no insurable interest therein. Appellants Weinholzer intervened, claiming they had leased the property insured, in connection with the theater building, to respondents; that the insurance policies were taken out for their benefit, but that a clerical error was made, whereby the amount was made payable to respondents, instead of to the interveners. Relief was demanded that the policies be reformed in that respect, and that they recover the full amount thereof.

At the opening of the trial the court considered the case to be of an equitable nature, and notified counsel that certain issues of fact would be submitted to a jury, and that the remaining issues would be tried by the court. No objection was made, and at the conclusion of the evidence the court submitted to the jury, among others, the following special question: "Was there a sale by Anton Weinholzer to the plaintiffs, Samuel and Benjamin Fink, in June, 1906, of the stock

and furniture and fixtures then upon the premises ?" To which the jury returned the answer: "Yes."

Thereupon the court made findings of fact and conclusions of law, and among other things found: "That at the time of the issuance of each of the policies of insurance herein mentioned, and at the time of the fire herein mentioned, plaintiffs were the absolute and unconditional owners of all said personal property, subject only to the terms of the lease and contract with interveners herein mentioned." And after finding that the appellant companies issued and delivered to respondents policies of insurance each in the sum of $2,000, to cover respondents' loss or damage by fire for the term of one year from the first day of July, 1907, the court further found that after the purchase of the property from the intervener Anton Weinholzer, as mentioned, and on or about the twenty third day of June, 1906, the respondents and interveners entered into a contract or lease, whereby it was agreed that respondents should keep said property insured for at least the sum of $4,000, payable in case of loss to the interveners as their interest should appear, and that said policies of insurance so taken should be delivered by respondents to the interveners as security for the payment and fulfilment of the terms of the lease; that by mistake or clerical error of the scrivener who prepared the lease the words "second parties" were inserted instead of "first parties," both in describing to whom payment should be made in case of loss and to whom the policies should be delivered.

The court further found that the building was totally destroyed by fire, and that the interveners did not attempt to rebuild the same within ninety days after the fire, that the rent was paid in accordance with the terms of the lease up to the time of the fire, and that at the time of the fire the interveners had no interest in the property or the insurance to be derived from loss thereof or damages thereto. Judgment was ordered for respondents for the amount of insurance, and that the interveners have no relief.

The insurance companies and interveners then moved for judgment notwithstanding the verdict, and, if that be denied, for a new trial upon the ground of errors of law occurring at the trial in receiving evidence of an oral agreement to contradict the terms of

the lease, in charging the jury, and that the evidence was not sufficient to sustain the verdict, and for misconduct of counsel. The court denied the motion for judgment notwithstanding the verdict, and granted the motion of the interveners for a new trial as to all issues between respondents and interveners submitted to and decided by the court, and denied the motion as to all issues submitted to the jury.

The interveners appealed to this court and served the following notice: "Please take notice that the above-named interveners appeal to the supreme court of the state of Minnesota from that part of the order of the district court of Ramsey county, Minnesota, dated August 20, 1909, refusing said interveners a new trial as to all issues submitted to a jury in said action, and from the part of said order separating the issues, and refusing to grant interveners' motion for a new trial on all of the issues in said case." The companies appealed from the entire order.

At the opening of the present term of court, respondents moved for an order dismissing the appeal of the interveners, upon the ground that it was not taken from the entire order, but from that part only which refused the interveners a new trial as to the issues submitted to the jury. This question was argued and submitted with the case on the merits. While the notice specifies that appeal is taken from the order of the court denying a new trial as to the issues submitted to the jury, it also states that the appeal is taken from the order refusing the interveners' motion for a new trial on all of the issues in the case. This is equivalent to an appeal from the entire order, and the motion to dismiss the appeal is denied.

The principal question on the merits was whether the parol evidence offered to support a sale of the insured property tended to vary the terms of the written instrument. To a proper understanding of the issues it will be necessary to briefly state the facts out of which the controversy arose.

Intervener Ella Weinholzer, having secured a twenty years' lease to a certain lot in the city of St. Paul, caused to be constructed thereon a certain building for the purpose of conducting a saloon and variety theater, and it was equipped by her husband, Anton Wein-

holzer, with the necessary furniture, fixtures, and paraphernalia. Having conducted the business for about six years, they leased the building and the ground upon which it stood for the remainder of the leasehold. It was claimed by respondents that on the twenty second of June, 1906, they purchased the stock, fixtures, and furniture from Anton Weinholzer for $5,000, $3,000 to be paid in cash upon the execution of the lease, and $2,000 in deferred monthly payments; that the lease was a subsequent and independent contract, having no reference whatever to the sale of the personal property, and that the provisions in the lease that the title to the personal property remain in the lessors, and be insured for their benefit, are consistent with respondents' claim that they were the owners of the legal title; that those provisions were inserted for the purpose of security only. The interveners, on the contrary, claimed that the $5,000 was paid for the good will of the business; that there was no absolute sale of the personal property; that the entire agreement with reference to it was embodied in the lease; that the title was not to pass to the interveners until the covenants were fully performed and upon payment of one dollar.

It is conceded that the policies should have been taken out in the name of appellants Weinholzer, and that a mistake was made in the lease by writing the word "second," instead of "first," parties.[2]

The lease provided that the first parties leased to the second parties the building, and such ground as the building was located upon, from the first day of July, 1906, to the thirtieth day of November, 1920, at a monthly rental of $350 per month, payable in advance, and contained the following provisions: "And the said second parties will not do or suffer anything to be done on said leased premises to increase the ordinary rate of insurance thereon, and the said second parties shall keep said furniture, fixtures and stock insured in some good reliable company for at least the sum of four thousand dollars ($4,000), payable in case of loss to said second [first] parties; and said insurance policies shall be delivered to said second [first] parties as security of the payment and fulfilment of the terms of said lease."

[2]See opinion on page 430, infra.

There was also a provision that the second parties would quietly and peaceably vacate the premises, and leave all the stock, fixtures, and furniture, and all other appurtenances in and about the building and premises, for the use, benefit, repossession and ownership of the parties of the first part, in case the parties of the second part should violate the terms of the lease, "and the title to said property shall always remain in said parties of the first part, except such merchandise as shall be retailed from time to time from the bar of said Empire Theater, up to and including the thirtieth day of November, 1920, when upon the full, complete performance of all the covenants herein contained, and upon the payment of one dollar good and lawful money of the United States by said parties of the second part to said parties of the first part, the title to all stock on hand and the furniture and fixtures in said building shall immediately vest in and thereby become the absolute property of the said parties of the second part, without any other act or payment whatsoever."

On its face this instrument is complete in itself. It purports to be a lease of the building and the personal property therein contained, consisting of stock, furniture and fixtures, at the rate of $350 per month, with the condition that upon full performance and upon payment of one dollar the lessors' title to the personal property shall be in the lessees. No ambiguity appearing upon its face, was it error to receive evidence of a prior oral contract of sale of the same property described in the lease? Was such preceding conversation as occurred merely preliminary, and did it become merged in the written document? The learned trial court was of opinion that the lease was not inconsistent with an independent prior verbal contract for the sale of the same personal property, upon the theory that, if respondents became the owners of the personal property by purchase on June 22, they might have subsequently consented that it be treated as the property of appellants Weinholzer for the purpose of security.

The case was complicated, and the question before the court was not easy to solve. We agree to the proposition that it did not necessarily follow that the lease was inconsistent with a previous purchase of the property by respondents. While preliminary oral agreements, or statements, will not be received in evidence to vary the terms of a

written contract, that rule does not apply to prior oral independent contracts not embraced within the terms of a subsequently written one. If there was a prior purchase of the personal property, and the subsequently executed written document may be construed consistently therewith, then the former does not tend to vary the terms of the latter. In whom was title to the personal property at the time of executing the lease? was the real issue before the court. In order to determine that question, evidence of the negotiations and conversations of the parties leading up to and including the execution of the document was proper, not for the purpose of changing the writing, but for the purpose of finding out the true status of the parties at the time it was executed. The trial court attempted to define what would have a proper bearing and what would not, and in some respects restricted the line of inquiry, and, had a proper offer of evidence been made, appellants might have been prejudiced by ruling it out.

However, the essential question is the effect of the special verdict that there was an absolute sale on the twenty-second day of June— the day preceding the execution of the lease. The court based its construction of the lease upon this special finding of the jury, and assumed that, because respondents had made a contract for an absolute purchase on the twenty-second, such must have been the status when the lease was executed, and that the contract was in the nature of a mortgage, so far as that property was concerned. We do not wish to be understood as intimating that a special issue may not be sent to a jury in an action of this character; but in this instance the special verdict did not settle the question of legal title at the time the lease was executed. Conceding respondents agreed to purchase the property on the twenty-second, that contract may have been varied by the subsequent conduct of the parties. They may have concluded to consider the sale conditional—the title to remain in the lessors. In dividing the issue of title in the manner stated, the jury were required to pass upon the evidence with respect to the twenty-second, and the court, upon the same evidence, as to what occurred on the twenty-third of June. We are of opinion that, if a new trial was necessary in one respect, it was necessary in all re-

spects. All evidence bearing on the question of title should be re-submitted and considered together.

It will be unnecessary to refer in detail to the other assignments of error. We find no evidence in the record of an improper combination between appellants and the interveners for the purpose of setting up a false defense, or a fraudulent claim to the insurance money, and there was no occasion for the attack upon the interveners' character before the jury. Whether prejudicial it does not become necessary to determine. Whether the risk was increased by installing the gas engine cannot be considered, as the record does not contain the provisions of the contract governing that question.

Reversed. New trial.

O'BRIEN, J., took no part.

On January 13, 1910, the following opinion was filed:

PER CURIAM.

In the application for reargument, attention is called to the statement in the opinion that it was conceded the policies should have been taken out in the name of the interveners. This was an inadvertence. It was conceded that a mistake had been made in the lease, but it was not conceded by respondents that the new policies involved in this action should have been taken out in the name of the interveners. But this misstatement was immaterial and does not affect the result.

What effect the termination of the lease by fire may have upon the issues, has not been considered, and we decline to pass on the question.

Petition denied.